RECORD NO. 15-2056

In The

# United States Court of Appeals

### For The Fourth Circuit

## G. G., by his next friend and mother, Deirdre Grimm,

*Plaintiff – Appellant*,

### v.

# GLOUCESTER COUNTY SCHOOL BOARD,

*Defendant – Appellee*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA AT NEWPORT NEWS

————————

## PETITION FOR REHEARING *EN BANC*

————————

David P. Corrigan (VSB No. 26341)
Jeremy D. Capps (VSB No. 43909)
M. Scott Fisher, Jr. (VSB No. 78485)
HARMAN, CLAYTOR, CORRIGAN & WELLMAN
Post Office Box 70280
Richmond, Virginia 23255
(804) 747-5200

*Counsel for Appellee*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. ii

RULE 35(B)(1) STATEMENT AND LOCAL RULE 40 ....................................... 1

STATEMENT ................................................................................ 2

REASONS FOR GRANTING REHEARING *EN BANC* ....................................... 4

    I.    The majority's decision injects uncertainty into an area of exceptional importance for educational institutions across the country, because it does not answer the fundamental question of whether the School Board's restroom and locker room policy violated Title IX ................................................................. 4

    II.    The question of whether Title IX prohibits schools from providing separate restrooms and locker rooms on the basis of biological sex is a matter of exceptional importance ......................... 10

    III.    The majority's decision has undermined the constitutional privacy rights of other students and is therefore a matter of exceptional importance ................................................. 14

CONCLUSION ............................................................................ 15

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Auer v. Robbins,
  519 U.S. 452, 117 S.Ct. 905 (1997) ..................................................... passim

Brannum v. Overton Cty.Sch. Bd.,
  516 F.3d 489 (6th Cir. 2008) .........................................................................14

Burns v. Gagnon,
  283 Va. 657, 727 S.E.2d 634 (2012) ............................................................14

Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,
  467 U.S. 837, 104 S. Ct. 2778 (1984) ............................................................8

Christensen v. Harris Cnty.,
  529 U.S. 576, 120 S. Ct. 1655, 1657 (2000) ............................................8, 12

Davis v. Monroe County Board of Education,
  526 U.S. 629, 119 S. Ct. 1661 (1999) ..........................................................14

Dickenson-Russell Coal Co., LLC v. Secretary of Labor,
  747 F. 3d 251 (4th Cir. 2014) .......................................................................12

Doe v. Luzerne Cty.,
  660 F.3d 169 (3d Cir. 2011) .........................................................................14

Faulkner v. Jones,
  10 F.3d 226 (4th Cir. 1993) ..........................................................................15

Kentuckians for Commonwealth, Inc. v. Riverburgh,
  317 F.3d 425 (4th Cir. 2003) ...........................................................................7

Lee v. Downs,
  641 F.2d 1117 (4th Cir. 1981) ......................................................................14

Martin v. Occupational Safety & Health Review Comm'n,
       499 U.S. 144, 151 (1991) ...................................................................14

Price Waterhouse v. Hopkins,
       490 U.S. 228 (1989)...........................................................................5

Sullivan v. Stroop,
       496 U.S. 478 (1990)...........................................................................7

Thomas Jefferson Univ. v. Shalala,
       512 U.S. 504 (1994)...........................................................................12

U.S. v. Virginia,
       518 U.S. 515, 116 S. Ct. 2264 (1996) ............................................14

## STATUTES

5 U.S.C. § 553 .........................................................................................2

20 U.S.C. § 1681 ......................................................................................1

20 U.S.C. § 1681(a) .................................................................................5

20 U.S.C. § 1682 ......................................................................................8

20 U.S.C. § 1686 ...................................................................................6, 9

## REGULATIONS

34 C.F.R. § 106.32 ...................................................................................6

34 C.F.R. § 106.33 ............................................................................. passim

34 C.F.R. § 106.41 ...................................................................................6

34 C.F.R. § 106.61 ...................................................................................6

## **OTHER AUTHORITIES**

118 Cong. Rec. 5804 (1972) ...................................................11

118 Cong. Rec. 5807 (1972) ...................................................12

118 Cong. Rec. 5808 (1972) ...................................................12

American Heritage Dictionary, 1187 (1976) ...........................11

http://abcnews.go.com/US/wireStory/court-overturns-virginia-schools-t
ransgender-bathroom-rule-38513822 .......................................9

https://www.aclu.org/news/federal-court-appeals-rules-favor-transgender-
student-virginia-restroom-access-case ......................................9

https://www.aclu.org/cases/gg-v-gloucester-county-school-board .........9

http://transgenderlawcenter.org/archives/12779 .......................9

The Random House College Dictionary, 1206 (rev. ed. 1980) ...............11

Webster's New Collegiate Dictionary, 1054 (1979) ..............................11

Webster's New World College Dictionary, 1331 (5th ed. 2014) ...........11

Webster's Third New International Dictionary, 2081 (1971) .................11

## RULE 35(B)(1) STATEMENT AND LOCAL RULE 40

The Plaintiff ("G.G."), a transgender boy, alleges that the Gloucester County School Board's ("School Board") restroom and locker room policy violates Title IX. The issue on appeal is whether a School Board violates Title IX by providing separate restrooms and locker rooms based on a student's biological sex, while also providing single-stall, unisex restrooms for any student, including transgender students, to use. This is a case of first impression in this Circuit. The School Board seeks rehearing *en banc* on whether the District Court correctly dismissed G.G's Title IX claim and properly denied the Motion for Preliminary Injunction.

Title IX seeks to eliminate discrimination "on the basis of sex." 20 U.S.C. § 1681. The Department of Education's ("DOE") regulations implementing Title IX permit "separate toilet, locker room, and shower facilities on the basis of sex." 34 C.F.R. § 106.33. The majority opinion gave *Auer* deference to a January 7, 2015, letter from the Acting Deputy Assistant Secretary of Policy for the Office of Civil Rights ("OCR") in defining the term "sex." This appeal is of exceptional importance for the following reasons:

1.     The panel majority did not reach the issue of whether the School Board's policy violated Title IX, leaving open the question of whether Title IX's statutory phrase "on the basis of sex" now means "on the basis of gender identity," not biological sex. This decision will have far-reaching consequences for schools

1

throughout the country without having addressed whether the restroom and locker room policy violates Title IX.

2.      Deference to an agency's interpretation of a statute, as opposed to a regulation, is only given controlling weight if it goes through notice and comment rulemaking as required by the Administrative Procedure Act. 5 U.S.C. § 553. Here, the majority gave deference to the OCR's interpretation of the term "sex", which is also contained in the statutory text of Title IX.  The panel's decision creates uncertainty on whether it redefined the statutory phrase of "on the basis of sex" for purposes of "any education program or activity," including separate living facilities, locker rooms, shower facilities, athletics and employment.  This decision will impact all educational institutions.

3.      The panel majority improperly applied *Auer* deference when 34 C.F.R. § 106.33 is unambiguous, and the OCR's interpretation is plainly erroneous and inconsistent with the regulation and Title IX.

4.      By applying *Auer* deference, the law under the majority opinion now violates the constitutional privacy rights of other students.

## **STATEMENT**

This case seeks to determine whether Title IX's ban on sex discrimination extends to "gender identity" and whether the DOE's regulations implementing

Title IX require educational institutions to allow transgender students to use the restroom that does not correspond with their biological sex.

In this case, G.G. was born a girl and has female reproductive organs. G.G. enrolled in high school as a girl. At the beginning of G.G.'s sophomore year, school officials were informed that G.G. was transgender and identified as a boy. School officials immediately expressed support, and agreed to change G.G.'s name in the school records, refer to G.G. using his new name and male pronouns, and continue with home-bound physical education.

After G.G. asked to use the boys' restroom in school, the School Board considered the difficult issues associated with a transgender student using a restroom that does not correspond with the student's anatomical sex. Taking the safety and privacy of all students into consideration, the School Board adopted a restroom and locker room resolution that provided in pertinent part:

> It shall be the practice of the GCPS to provide male and female restroom and locker room facilities in its schools, and the use of said facilities shall be limited to the corresponding biological genders, and students with gender identity issues shall be provided an alternative appropriate private facility.

The School Board also issued a news release that stated in part, "[t]he District also plans to designate single-stall, unisex restrooms, similar to what's in many other public spaces, to give all students the option for even greater privacy." Under the policy, the School Board has provided three unisex, single-stall

restrooms for any student to use.  G.G. cannot use the boys' restrooms, but is permitted to use the girls' restrooms and the single-stall restrooms.

G.G. filed a Complaint and Motion for Preliminary Injunction, alleging that the School Board's policy violates the Equal Protection Clause of the Fourteenth Amendment and Title IX.  The District Court granted the School Board's Motion to Dismiss the Title IX claim and denied the Motion for Preliminary Injunction. The District Court has not ruled on the Equal Protection claim.

On appeal, a divided panel reversed the District Court's dismissal of the Title IX claim.  Based solely on the January 7, 2015, unpublished OCR letter, the majority opinion concluded that the District Court did not "accord appropriate deference to the relevant Department of Education regulations." Op. 5.  The divided panel also vacated the denial of the preliminary injunction, remanding the case for further proceedings.  Judge Niemeyer dissented, finding the majority opinion "misconstrues the clear language of Title IX and its regulations." Op. 48.

## REASONS FOR GRANTING REHEARING *EN BANC*

**I.      The majority's decision injects uncertainty into an area of exceptional importance for educational institutions across the country, because it does not answer the fundamental question of whether the School Board's restroom and locker room policy violated Title IX.**

The issue on appeal is whether Title IX requires schools to allow transgender students to use the restroom that is consistent with their gender identity, but not their biological sex.  G.G. asserts that "Title IX's prohibition on

discrimination 'on the basis of sex' protects transgender students from discrimination based on their transgender status or gender nonconformity." <u>Doc. 71. p. 17.</u> G.G. alleges that by "singling" him out for "different and unequal treatment because he is transgender, the Board has discriminated against him based on sex, in violation of Title IX." <u>Doc. 71. p. 21.</u> G.G. relies on <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989), for this proposition. The School Board contends that because its restroom and locker room policy applies equally to all students, it did not violate Title IX.

The panel majority did not address this fundamental question - whether Title IX's statutory prohibition of discrimination "on the basis of sex" includes "gender identity." As a result, the majority did not address whether the School Board's policy violated Title IX. By not addressing this fundamental question, the majority's opinion reversing the dismissal of the Title IX claim injects uncertainty and confusion into this exceptionally important area of the law.[1]

Title IX provides that "no person … shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX also provides that "nothing contained herein shall be

---

[1] The appellate briefs filed by G.G. and the United States first sought to show that Title IX protected transgender students. Then, they argued that 34 C.F.R. § 106.33 did not provide a safe haven for the School Board.

construed to prohibit any educational institution … from maintaining separate living facilities for the different sexes."  20 U.S.C. § 1686.

The DOE's regulations implementing Title IX permit educational institutions to provide "separate toilet, locker room, and shower facilities on the basis of sex"; separate housing "on the basis of sex"; separate athletic teams "for members of each sex"; and consider an employee's sex for employment in a sex-segregated locker room or toilet facility.[2]

The text of Title IX and its regulations clearly contemplate the male/female binary view of sex, with its use of the phrase "students of both sexes" and the requirement that facilities "of one sex" shall be comparable to those for "the other sex."  G.G. and the United States, however, argue that Title IX protects gender identity and assert the School Board cannot rely on § 106.33 in providing separate restrooms for male and female students.  Instead, G.G. and the United States claim §106.33 and the term "sex" are ambiguous.  They rely on a January 7, 2015, letter ("OCR letter") from the OCR Acting Deputy Assistant Secretary of Policy, James A. Ferg-Cadima, a former ACLU lawyer, to interpret the regulation.[3]

The OCR letter states that although "[t]he Department's Title IX regulations permit schools to provide sex-segregated restrooms, locker rooms, shower

---

[2] 34 C.F.R. §106.33; 34 C.F.R. §106.32; 34 C.F.R. §106.41; 34 C.F.R. §106.61.
[3] By arguing the term "sex" is ambiguous in the regulations, G.G. and the United States are actually claiming that it is also ambiguous in Title IX itself. As a result, they are attempting to use the OCR letter to redefine "sex" in the entire statute.

facilities, housing, athletic teams, and single-sex classes…" when a school elects to do so, it "<u>generally</u> must treat transgender students consistent with their gender identity." <u>JA55</u>. G.G. and the United States argue this means schools are required to allow transgender students to use the restroom of their gender identity.

The panel majority determined an ambiguity existed not in the language of the regulation (because it clearly refers to male and female), but because "it is silent as to how a school should determine whether a transgender individual is a male or female." <u>Op. 20</u>. As a result, the majority afforded *Auer*[4] deference to the OCR letter, holding that the regulation requires schools to allow transgender students to use the restroom that they identify with.

The majority's opinion begs the question of whether it adopted G.G.'s and the United States' backdoor attempt to redefine the term "on the basis of sex" in the statutory language of Title IX. Specifically, **the majority found "that 'sex' should be construed uniformly throughout Title IX and its implementing regulations …"** <u>Op. 26</u>; <u>see</u> <u>Sullivan v. Stroop</u>, 496 U.S. 478, 484 (1990); <u>Kentuckians for Commonwealth Inc. v. Riverburgh</u>, 317 F.3d 425, 440 (4th Cir. 2003) ("[B]ecause a regulation must be consistent with the statute it implements, any interpretation of a regulation naturally must accord with the statute as well.").

---

[4] <u>Auer v. Robbins</u>, 519 U.S. 452, 461 (1997).

Under the guise of *Auer* deference, **this opinion injects uncertainty into whether the statutory phrase "on the basis of sex" is now defined as "on the basis of gender identity."**  Without addressing the text of Title IX or citing any supporting case law, the panel majority opinion leaves educational institutions guessing as to whether Title IX is violated by providing separate living facilities, showers, locker rooms and athletics based on biological sex.

While G.G. purported to challenge only the definition of "sex" with respect to restrooms, the majority's opinion will be construed to redefine the term "sex" for all purposes in Title IX.  See, Op. 46.  This new interpretation of Title IX will have occurred - not with the DOE going through notice and comment rulemaking as required by the Administrative Procedure Act - but through an OCR letter.  This result will have occurred even though the DOE cannot implement a rule, regulation or order "unless and until approved by the President." 20 U.S.C. § 1682; cf. Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 (1984); Christensen v. Harris Cnty., 120 S. Ct. 1655, 1657 (2000) ("Interpretations such as those in opinion letters … do not warrant Chevron-style deference.").

In fact, within days of the opinion the ACLU posted "the U.S. Court of Appeals for the Fourth Circuit ruled in favor of [G.G.] and held that *Title IX protects the rights of transgender students to use sex segregated facilities* that are

8

consistent with their gender identity." (emphasis added).[5]  News outlets reported that "[t]he court said the policy violated Title IX, the federal law that prohibits discrimination in schools" and are debating the implications the opinion has on other laws across the country.[6]

Without addressing whether the School Board's policy violated Title IX, and instead addressing whether it complied with § 106.33, the majority opinion leaves more questions unanswered than answered.  Does Title IX now require educational institutions to allow biologically and anatomically male students, who identify as female, to live in female housing and vice versa, despite this result directly conflicting with 20 U.S.C. § 1686?  Are schools required to allow transgender students to use the showers and locker room facilities that correlate to their gender identity, not their anatomical sex?  Can schools consider the biological sex of employees who are to be hired in these sex-segregated facilities?  Must educational institutions permit biologically male students who identify as female to participate

---

[5]  https://www.aclu.org/cases/gg-v-gloucester-county-school-board;  https://www.aclu.org/news/federal-court-appeals-rules-favor-transgender-student-virginia-restroom-access-case

[6]  See, e.g., http://abcnews.go.com/US/wireStory/court-overturns-virginia-schools-transgender-bathroom-rule-38513822; For example, the Transgender Law Center threatened lawsuit against a school district in South Carolina that had a policy similar to Gloucester's, claiming that the opinion, "affirmed that transgender students have the right to use facilities that match their gender identity" and "sets a 'binding precedent' for all states within the Fourth Circuit, which includes South Carolina." http://transgenderlawcenter.org/archives/12779.

in competitive female sports, and vice versa? These are all questions of exceptional importance that justify *en banc* review.

## II. The question of whether Title IX prohibits schools from providing separate restrooms and locker rooms on the basis of biological sex is a matter of exceptional importance.

The panel majority improperly applied *Auer* deference to the interpretation of 34 C.F.R. § 106.33. The regulation is not ambiguous. G.G. agrees that the plain text of § 106.33 allows schools to assign restrooms for boys and girls based on sex. Doc. 71, pp. 31, 35. The United States interprets § 106.33 to mean that educational institutions may provide separate restrooms for boys and girls. Doc. 25-1, p. 22 n.8. The panel majority "had little difficulty concluding that the language itself" ("of one sex" and "of the other sex") "refers to male and female students." Op. 19. "Read plainly then, § 106.33 permits schools to provide separate toilet, locker room, and shower facilities for its male and female students." Op. 19. "By implication, the regulation also permits schools to exclude males from the female facilities and vice-versa." Op. 20.

The School Board's policy is consistent with these interpretations, and provides separate restrooms based on biological sex. The United States, however, states this plain meaning does not "give schools the authority to decide that only those males who were assigned the male sex at birth" (i.e., male reproductive

organs) "can use the boys' restroom." <u>Doc. 25-1, p. 23</u>. Instead, the DOE states it has the authority to decide the meaning of "sex."

Title IX was enacted in 1972, the regulations were promulgated in 1975 and readopted in 1980. As Judge Niemeyer's dissent aptly pointed out, the meaning of "sex" was well-established at the time Title IX and its regulations were enacted. <u>Op. 61</u>. During that time period, the dictionary definitions of "sex" universally referred to the physiological distinctions between males and females, particularly with respect to their reproductive functions. <u>See</u> <u>Op. 61-62</u>, citing <u>The Random House College Dictionary</u> 1206 (rev. ed. 1980); <u>Webster's New Collegiate Dictionary</u> 1054 (1979); <u>American Heritage Dictionary</u> 1187 (1976); <u>Webster's Third New International Dictionary</u> 2081 (1971). That was true at the time G.G. filed the Complaint. <u>JA59</u>. The term "sex" continues to be defined based on physiological distinctions between males and females. See <u>Op. 62</u>, citing <u>Webster's New World College Dictionary</u> 1331 (5th ed. 2014). Sex was and is defined based on the biological and anatomical differences between men and women.

These dictionary definitions are consistent with the legislative history of Title IX. Title IX was enacted to open up educational opportunities for girls and women in education and to address discrimination toward women. See 118 Cong. Rec. 5804 (1972) ("measure is needed to provide women with solid legal

protection from the persistent, pernicious discrimination … serving to perpetuate second-class citizenship for American women."); 118 Cong. Rec. 5807 (1972)("regulations would allow enforcing agencies to permit differential treatment by sex"); 118 Cong. Rec. 5808 (1972).  Because the term "sex" was clearly understood at the time the statute and regulations were enacted, §106.33 is not ambiguous, and *Auer* deference was not appropriate.

Deference to an agency's interpretation of its regulation "is warranted only when the language of the regulation is ambiguous."  <u>Christensen</u>, 120 S. Ct. at 1657.  "When the regulation in question is unambiguous . . . adopting the agency's contrary interpretation would permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation."  <u>Dickenson-Russell Coal Co., LLC v. Secretary of Labor</u>, 747 F.3d 251, 256-57 (4th Cir. 2014); <u>see</u> <u>Thomas Jefferson Univ. v. Shalala</u>, 512 U.S. 504, 512 (1994) (no deference if an "alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation").

Far from merely interpreting a regulation, the OCR letter – a letter drafted to address this School Board's restroom policy – improperly legislates through the pretense of interpreting an "ambiguous" regulation that contains the same phrase as Title IX's statutory language. As Judge Niemeyer recognized, "[a]ny new definition of sex that excludes reference to physiological differences, as the

12

majority now attempts to introduce, is simply an unsupported reach to rationalize a desired outcome." Op. 63.  The District Court found,

> To defer to the Department of Education's newfound interpretation would be nothing less than to allow the Department of Education to "create *de facto* a new regulation" through the use of a mere letter and guidance document … If the Department of Education wishes to amend its regulations, it is of course entitled to do so. However, it must go through notice and comment rulemaking, as required by the Administrative Procedure Act. See 5 U.S.C. § 553.

JA150-151.

Furthermore, **the OCR letter itself is ambiguous.**  The letter states that a "school **generally** must" treat students consistent with their gender identities.[7] Yet, to accommodate transgender students, **schools are encouraged "to offer the use of gender-neutral, individual-user facilities** to any student who does not want to use shared sex-segregated facilities …"  The majority interprets this to mean that G.G. must be permitted to use the boys' restroom because he wants to use it.  A reasonable alternative reading, however, is that any student, including transgender students, who do not want to use the restroom associated with their biological sex, should be offered the use of a gender-neutral single stall restroom – exactly as offered to G.G. by the School Board.

---

[7] The "authority" OCR cites for this proposition states that schools "must treat transgender students consistent with their gender identity in all aspects of the planning, implementation, enrollment, operation, and evaluation of **single-sex classes**" – not restrooms. JA55, n. 4.

The OCR's "interpretation is plainly erroneous [and] inconsistent with the regulation." Auer, 519 U.S. at 461; Martin v. Occupational Safety & Health Review Comm'n, 499 U.S. 144, 151 (1991). Yet, the majority panel holds "for the first time ever" that a school "cannot provide separate restrooms and locker rooms on the basis of biological sex." Op. 47. "Rather, it must now allow a biological male student who identifies as female to use the girls' restrooms and locker rooms and, likewise must allow a biological female student who identifies as male to use the boys' restrooms and locker rooms." Id.

This is a matter of exceptional importance for the full Court to review.

## III. The majority's decision has undermined the constitutional privacy rights of other students and is therefore a matter of exceptional importance.

This Court has recognized a right to bodily privacy. Lee v. Downs, 641 F.2d 1117, 1119 (4th Cir. 1981); See also, U.S. v. Virginia, 518 U.S. 515, 551 (1996); Doe v. Luzerne Cty., 660 F.3d 169, 177 (3d Cir. 2011); Brannum v. Overton Cty. Sch. Bd., 516 F.3d 489, 498 (6th Cir. 2008). The School Board has a responsibility, particularly where children are still developing, both emotionally and physically, to ensure students' privacy. See, e.g., Burns v. Gagnon, 283 Va. 657, 671, 727 S.E.2d 634, 643 (2012); Davis v. Monroe County Board of Education, 526 U.S. 629, 646-47 (1999).

The School Board's policy was developed to treat all students and situations the same. It does not discriminate and respects the privacy interests of all students.

14

See e.g., <u>Faulkner v. Jones</u>, 10 F.3d 226, 232 (4th Cir. 1993) (recognizing "society's undisputed approval of separate public rest rooms for men and women based on privacy concerns.") The majority agreed that "an individual has a legitimate and important interest in bodily privacy such that his or her nude or partially nude body, genitalia, and other private parts" are not involuntarily exposed. <u>Op. 27</u>. The majority, however, determined that this privacy interest was not paramount absent a constitutional challenge to the regulation or the agency's interpretation. <u>Op. 28</u>. This position "tramples on all universally accepted protections of privacy…" <u>Op. 47</u>. The right to privacy for all students strongly supports maintaining sex-segregated bathrooms and locker rooms.

## <u>CONCLUSION</u>

This Court should grant rehearing *en banc*.

**GLOUCESTER COUNTY SCHOOL BOARD**

By Counsel

/s/ David P. Corrigan
David P. Corrigan (VSB No. 26341)
Jeremy D. Capps (VSB No. 43909)
M. Scott Fisher, Jr. (VSB No. 78485)
Attorney for Gloucester County School Board
HARMAN, CLAYTOR, CORRIGAN & WELLMAN
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 – Phone
804-747-6085 – Fax
dcorrigan@hccw.com
jcapps@hccw.com
sfisher@hccw.com

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 3rd day of May, 2016, I caused this Petition for Rehearing *En Banc* to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel that are registered CM/ECF users.

/s/ David P. Corrigan
*Counsel for Appellee*